WOLVERTON *v.* STATE

No. 42801        March 16, 1964        161 So. 2d 645

*Matthew Harper, Jr.,* Laurel, for appellant.

*G. Garland Lyell, Jr.,* Asst. Atty. Gen., Jackson, for appellee.

862

PATTERSON, J.

Appellant was convicted of the crime of armed robbery and sentenced to three years in the State Penitentiary. From this conviction he appeals.

At the conclusion of the evidence offered on behalf of the State, the appellant moved the court to exclude the evidence and to direct the jury to find the appellant not guilty. This motion was overruled by the trial court. Appellant assigns as error, among other things, the overruling of this motion for a peremptory instruction. Since the determination of this issue is decisive of the case, the other assignments of error will not be considered other than as they might relate to this primary issue.

■■ ■ The facts as proved by the State, and every reasonable inference that can be drawn therefrom, must be considered by the trial court and by this Court in determining whether the appellant here was entitled to the peremptory instruction requested directing the jury to find him not guilty.

■■ ■ The testimony reflects without question that on or about December 20, 1962, one Fred Lawless, an employee of Mack's Curb Store No. 1 on Chantilly and Joe Wheeler Streets in the City of Laurel, Mississippi, was held up at the point of a gun and robbed by two Negro boys of the sum of $40. The robbery occurred immediately after Lawless closed the store at about ten o'clock at night, and as he, Lawless, started to enter his automobile which was parked on the east side of the building, the building and the surrounding area then being in darkness. These two assailants of Lawless took his wallet and commanded him to reopen the store but fled when the lights of an approaching automobile appeared and turned in their direction.

Lawless was unable to identify either of the two men or boys who held him up at gun point. The crime was reported to the police department of the city and an investigation was then made by Officers John A. Gatlin and Tommy Myers. Mr. Gatlin testified to the fact that he found a leather glove on the sidewalk adjacent to Joe Wheeler Street and to the rear of the store where the hold-up was committed. Policeman Myers testified that he also took part in the investigation of the hold-up on the night it occurred and on some several days following. Defendant was arrested by Officer Myers at three o'clock A.M., December 23, 1962, as he was walking down the street at a time when the defendant was violating no law. He testified further that the defendant admitted to him the glove which had been found was his, that is, the leather glove which had been picked up

at the scene of the crime by Officer Gatlin was the property of the defendant by the defendant's own admission.

The further testimony of Myers was to the facts and circumstances relating to a written confession or statement by defendant in his own handwriting, dated December 26, 1962. This writing was introduced into the record over defendant's objection, and is as follows:

"Dec. 26th 1962

"Ellisvill Miss.

"Dec. 20th Ernsest Currie and John Jackson were standing on the corner of Hi-way 84 and Joe Wheller about 9:40 or 9:45 planing a arm robbery job Jackson call me from my house and told me to run so I did and I saw Ernest Currie ahead I said were are you all going Ernest said to get this money were you think I say waite Jackson you dont know what you doing Ernest said I done did this before. I said Jackson you don't know what you doing any way what Ernest want you to do Ernest said go in and order some beer and when the man go in the cooler close the door and the door will lock and he will come in with the gun I said the cooler open frome the in side. I said Jackson you are drunk Ernest said give me these globes I need them I said you know you got my globes if you lose them and the police find them I will lie but I am not going to take the blame. Ernest said if I lose them I will pay you for them I said you know everybody know them my globes Ernest said time is running out I said how much money in the place Ernest said 3 or 4 hundred dollars, I said how you know he said it's close to Christmas and they get plenty custmos Ernest said need these shades too I said Jackson let's forget about this Ernest said you chicken Jackson here take the gun then I said I'll be back Jackson you do what you want to if your mind an't made up when I get back Ernest said see who in there I said you can see that old man from here I dont want to be in know arm robbery Henry Ford

came and said I know what's up I said Jackson and
Ernest drunk Ernest drunk or solbe it's what you do
and get away with Willie Walker and his 2 brothers
were comeing I said Ernest and Jackson going to pull
a job Ernest said you dam right if you don't want
to be in it you better get your 2 brother and get Henry
Ford said I'll see you all Ernest said waite I said where
are you going he said up here I said I'm going in a
minute Ernest said if you tell on me I will kill you I said
it an't no more than 35 or 40 dollars in that cash box
5 or 6 ones a few 5's and a few 10's I said what you
going to do when you go in there Ernest said put the
gun in his face I said Jackson what you got in your face
Jackson said that's right Ernest you get in my shoes
I said if they go over the ford let's go I said Jackson
forget you don't know what you doing Ernest said to-
night is tonight then the man close the doors I said
see you don't know what you Ernest said he will bring
a bag out I ask Henry Ford wher this man live he said
behind the place I said that man don't need to bring
know money bag that close to the house I said if you go
over there I'am going so the man turn off the light and
they went behind the store and me and Henry Ford left
running I went to Ruby Foots and Ford went home

"About 25 or 30 minutes later I went back to the babber
shop I ask Big for a line Jessie Brown — Sonney Cooley
then I seen Henry Ford up the street with 2 bottlers we
both said were Jackson and Ernest then Ford said that
look like R.C. with a wine bottler I said thats Jackson
I remember those shoes then I seen Ernest Ernest start-
ed to talk I said come to my rome you want to talk to
me when we got there Ernest said I lost your globes I
said you know what that mean he said I will pay you
for them Jackson said you know that guy don't have
any money he didn't have nothing but some papers I
said what did you do with the wallet Jackson said Ern-
est throwed it over in a woman yard I told Jackson

put you in a trick  I know that man had a dollar  Ernest said don't ask me for no money  me and Jackson were to kill or be kill  then Henry said if you got any thing forget then I said — I'll going to get Sylvia Ann and I'am going to bed then Ernest said that look like the police  Jackson said pass by them Ford with those drinks I ask Jackson how old are you he said 16 or 17  I said the best thing for you to do is get on the track and go home Ernest said they can't rest us for being togheater  I said that man was not blind you rob  he can see the height in the dark  Ernest said the man said he were poe and the boss lock the money in the safe and the seen a car comeing the man were goin out in the street so they ran  Henry Ford left and I left  Ernest and Jackson at the house when me and Sylvia were comeing back they ran out so she ask me what were those boys doing there.

"This statement of 5 pages in my hand writting is true and correct to the best of my nolege and has been made by me without any threats promises or rewards offered me and is may to Capt. T. E. Myeres and Capt. E. H. Jones of the Laurel Police dept and they have advised me of my rights and that I do not have to make a statement and I sign my name, this the 26th day of Dec 1962.

"Robert E. Wolverton

"Witnesses:

"T. E. Myers
"E. H. Jones"

It is at once apparent from the testimony of Officer Myers and from the written statement of the defendant that if defendant can be connected with this crime at all it is through the glove found near the scene of the crime, and the "globes" mentioned in the statement. A careful study of the "confession" reveals it to be nothing more than a statement. It confesses nothing. Considered in its entirety it reveals that the appellant endeavored

to talk his associates out of the robbery, he having known nothing about it until called from his house just a minute or so before it was executed. The statement itself is replete with such statements as, "I said Jackson you are a drunk," "I said Jackson let's forget about this," "I said Jackson forget you don't know what you are doing," "I said if you go over there I'm gone," and "they went behind the store and me and Henry Ford left running."

In addition to the above the appellant also stated, "Ernest said give me those globes, I need them. I said you know you got my globes if you lose them and the police find them I will lie but I am not going to take the blame." Conceding every fact offered by the State to be true, and every reasonable inference to be deduced therefrom, the most that can be concluded therefrom is that an armed robbery was committed and that defendant's glove was found near the scene. Defendant's statement reflects that Jackson asked for the gloves, and that later he stated to appellant that he lost the glove, leaving the inference that the appellant here acquiesced to Jackson's request for the gloves and that in fact he loaned them to Jackson. Appellant's further statement in the "confession" are to the effect that he tried to dissuade the others from the robbery, and, in fact, ran away from the scene prior to its commission. Appellant did not plan the robbery, did not participate in it, and did not receive any of the fruits of the robbery.

After a careful consideration of the record, we find no evidentiary facts or inference therefrom sufficient to warrant this case being submitted to the jury. In arriving at this conclusion we are supported by the district attorney's statements in his closing argument, which are here before us upon a proper bill of exceptions signed by the trial judge: "Although there was no evidence from the witness stand to show this, you know and I know that this defendant and another colored boy were

there across the street acting as lookouts.'' It is our opinion that the peremptory instruction should have been granted directing the jury to find the defendant not guilty.

The cause is, therefore, reversed and the defendant discharged.

Reversed and defendant discharged.

*Lee, C. J., and Ethridge, Gillespie and Rodgers, JJ.,* concur.